**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**ROGER LEWIS**                                                                          **PLAINTIFF**

**V.**                                      **CIVIL ACTION NO. 3:14cv137-CWR-LRA**

**CAROLYN W. COLVIN
Commissioner of SSA**                                                          **DEFENDANT**

## REPORT AND RECOMMENDATION

This cause is before the undersigned for a report and recommendation as to Defendant's Motion for an Order Affirming the Commissioner's Decision. Having considered the entire record in this matter, the undersigned recommends that the motion be granted for the following reasons.

### I. BACKGROUND AND HISTORY

Plaintiff's application for social security disability and disability insurance benefits was denied initially and upon reconsideration, as well as denied by an Administrative Law Judge (ALJ) on March 7, 2013, and the Appeals Council on August 30, 2013. Plaintiff subsequently moved for reconsideration, which was also denied by the Appeals Council.

Plaintiff was forty-nine years old at the time of the application, making him a "younger" person for social security purposes at that time.[1] Plaintiff has a high school education, and before claiming to be disabled, worked as a truck driver.

---

[1] Plaintiff turned fifty approximately a month after the application, and therefore became a person "closely approaching advanced age" for social security purposes.

Following the applicable five-step analysis,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of March 8, 2011 (step 1), and had severe impairments of diabetes mellitus, high blood pressure, obesity and right hip bursitis (step 2). The ALJ concluded that Plaintiff's impairments were not as severe as any impairment listed as presumptively disabling in the pertinent regulations (step 3). The ALJ then determined that Plaintiff retained the residual functional capacity (RFC) to perform light work "except that he requires a sit/stand option, is limited to occasional stooping, kneeling, crouching, climbing, and crawling, can never climb at heights, and must avoid exposure to heights, hazards, and dangerous/moving machinery. Finally, due to medication side effects, particularly drowsiness and dizziness, the claimant is limited to simple, one-to-two step tasks." The ALJ determined that Plaintiff was unable to return to his past relevant work as a truck driver (step 4). *Id.* at 25. At step 5, utilizing the testimony of a vocational expert, the ALJ determined that Plaintiff was capable of performing other work as a small-parts assembler, stuffer, and sorter.[3]

## STANDARD OF REVIEW

When considering social security appeals, this Court's review is limited to determining

---

[2] "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). If, at any step, the plaintiff is determined to be disabled or not disabled, the inquiry ends. The plaintiff bears the burden through the first four steps of the analysis. At the fifth, the defendant must show that there is other substantial work in the national economy that the claimant can perform. *See, e.g., Myers v. Apfel*, 238 F.3d 617, 619-620 (5th Cir. 2001).

[3] ECF No. 8, pp. 16-23.

Following the applicable five-step analysis,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of March 8, 2011 (step 1), and had severe impairments of diabetes mellitus, high blood pressure, obesity and right hip bursitis (step 2). The ALJ concluded that Plaintiff's impairments were not as severe as any impairment listed as presumptively disabling in the pertinent regulations (step 3). The ALJ then determined that Plaintiff retained the residual functional capacity (RFC) to perform light work "except that he requires a sit/stand option, is limited to occasional stooping, kneeling, crouching, climbing, and crawling, can never climb at heights, and must avoid exposure to heights, hazards, and dangerous/moving machinery. Finally, due to medication side effects, particularly drowsiness and dizziness, the claimant is limited to simple, one-to-two step tasks." The ALJ determined that Plaintiff was unable to return to his past relevant work as a truck driver (step 4). *Id.* at 25. At step 5, utilizing the testimony of a vocational expert, the ALJ determined that Plaintiff was capable of performing other work as a small-parts assembler, stuffer, and sorter.[3]

## STANDARD OF REVIEW

When considering social security appeals, this Court's review is limited to determining

---

[2] "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). If, at any step, the plaintiff is determined to be disabled or not disabled, the inquiry ends. The plaintiff bears the burden through the first four steps of the analysis. At the fifth, the defendant must show that there is other substantial work in the national economy that the claimant can perform. *See, e.g., Myers v. Apfel*, 238 F.3d 617, 619-620 (5th Cir. 2001).

[3] ECF No. 8, pp. 16-23.

whether substantial evidence supports the findings made by the Social Security Administration and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007).  Substantial evidence has been defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)).  The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).  The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision.  *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988)*; Harrell*, 862 F.2d at 475.  If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld.

## DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed or alternatively remanded because the ALJ failed to properly develop the record; failed to consider all of his impairments at step three; and, failed to support her residual functional capacity assessment with substantial

evidence. Plaintiff also charges that the Appeals Council failed to properly consider his treating physician's opinion.

### 1. The ALJ Properly Developed the Record

Plaintiff first contends that the ALJ failed in her affirmative duty to develop a full and fair record with regard to his visual impairment, resulting in an erroneous finding that his visual impairment was non-severe at step two. A claimant bears the burden of proving his impairments are severe at step two. The diagnosis of an impairment alone is insufficient. *Hames*, 707 F.2d at 165 ("The mere presence of some impairment is not disabling per se."). The ALJ is also not required to order additional evidence when the record is sufficient to establish whether the claimant is disabled. The duty is discretionary and must be balanced against the fact that the claimant bears the burden of proof through step four of the evaluation process. *Audler,* 501 F.3d at 448. As set forth below, sufficient evidence was present here.

Based on the evidence of record, the ALJ concluded that Plaintiff's suspected glaucoma was a non-severe impairment because it caused "no more than minimal functional limitations and/or [did] not meet the requisite durational requirements of the Act." *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). The ALJ noted that though Plaintiff had been suspected of having glaucoma, no diagnosis was made. Specifically, the ALJ observed that "although the claimant was glaucoma-suspect on August 1, 2012, October 30, 2012, and December 4, 2012, there is no evidence of a conclusive diagnosis. Furthermore, his uncorrected vision was 20/20 bilaterally on August 1, 2012." (internal citations omitted). Plaintiff argues, however, that his blurred vision was a severe impairment as evidenced by the medical reports of his examining optometrist and

ophthalmologist.[4]

Optometrist Dr. Larry Routt, examined Plaintiff in August 2012. On examination, Dr. Routt noted that Plaintiff complained of blurred vision, without glasses, and wore over-the-counter reading glasses. The diagnosis section of Dr. Routt's report indicated the following: "Glaucoma Suspect, Unspecified," "Conjunctival Pigmentations," "Retinopathy: Diabetic: Background," and "Vision Blurred, NOS." Dr. Routt referred Plaintiff to an ophthalmologist, specializing in vitro-retinal disease, to ascertain whether Plaintiff had glaucoma. On October 30, 2012, Plaintiff saw Ophthalmologist Dr. Omolola Idowu, who assessed Plaintiff's eye condition as "poorly controlled diabetes without retinopathy" and "glaucoma suspect." On December 4, 2012, Dr. Idowu again assessed Plaintiff as "glaucoma suspect" noting that the test results were inconclusive, as they were "unreliable." Notwithstanding the medical evidence, Plaintiff argues the ALJ should have ordered a consultative ophthalmological examination to fully and fairly develop the record. Plaintiff asserts that his medical records clearly raised a suspicion that he suffered from a severe visual impairment, but cites no specific evidence to support his claim.[5]

Plaintiff has failed to convince the undersigned that the record needs further development. Plaintiff saw an ophthalmologist as recommended, twice, but still no diagnosis of glaucoma was made. Even if it had been, there is no record evidence that a glaucoma diagnosis would change Plaintiff's work ability in any manner. Further, as noted by the ALJ, Plaintiff's uncorrected vision was 20/20, and there is no medical evidence of record indicating that his blurred vision was expected to last twelve months so as to constitute a severe impairment. The

---

[4]ECF No. 8, pp. 19, 21.

[5]ECF No. 8, pp. 271-285, 330-332.

record simply does not reflect that Plaintiff's vision is impaired such as to impact his work ability. Plaintiff's arguments to the contrary are without merit.

### 2.     The ALJ's Step Three Determination was not Contrary to Law

Next, Plaintiff argues that the ALJ erred in merely stating that he did not meet the Listings without identifying any particular Listing that she considered and rejected.  In support, Plaintiff cites *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 1997).  In *Audler*, the ALJ summarily determined that the claimant's impairments did not meet or equal any of the impairments in the Listings, but did not identify which Listing the claimant failed to meet or explain how she reached that conclusion.  *Id*. at 448.  The *Audler* Court held that "[such a bare conclusion is beyond meaningful judicial review."  *Id*.  (quotation omitted).  However, the *Audler* Court stressed that procedural perfection is not required in administrative proceedings.  *Id.*  A claimant must demonstrate that his substantial rights were affected.  *Id.* at 448.  Such a showing typically requires a claimant to demonstrate that his impairment satisfies the criteria of a particular listing. *Id*.  at 448-49.

In the present case, Plaintiff does not identify any specific listing that he contends the ALJ failed to consider.  He simply asserts that the ALJ erred in not explaining how she "factored in" his "massive obesity," and argues that his obesity somehow fits him within a listing, but points to no evidence to support such a conclusion.

Social Security rulings recognize that obesity, although not a listed impairment, can reduce an individual's occupational base for work activity in combination with other ailments.  *See* SSR 02-1p and SSR 96-8p.  In compliance with the rulings, the ALJ acknowledged that "obesity can cause limitation of function, and that the combined effects of obesity with other

impairments may be greater than might be expected without obesity." The ALJ also explained, contrary to what Plaintiff argues, how she considered Plaintiff's obesity:

> As for the opinion evidence, significant weight is given to the physical residual functional capacity assessment completed by Disability Determination Services medical consultant Thomas Tapley, M.D., on October 31, 2011 (Exhibit 8F). ***However, in view of additional evidence received at the hearing level, including the claimant's obesity and the effect of such on his right hip bursitis, additional non-exertional limitations, as well as a sit/stand option, are warranted.***[6]

(Emphasis added). The foregoing statement establishes that the ALJ considered the cumulative effect of Plaintiff's obesity. *Thompson v. Astrue*, 232 F. App'x. 421 (5th Cir. 2007). Although the ALJ did not offer a point-by-point analysis, Plaintiff's argument that the ALJ failed to properly consider his obesity must fail. In addition, Plaintiff has identified no additional limitations imposed by his obesity that the ALJ failed to consider, and nothing in the record suggests that his obesity caused greater limitations than those set forth in the ALJ's residual functional assessment.

Though not citing the applicable listing or providing reasons for rejecting all listings constituted reversible error in *Audler*, the error in not rejecting a specific listing was harmless in this case. Substantial evidence supports the ALJ's findings that Plaintiff's obesity and other impairments, alone or in combination, did not meet a Listing impairment.

### 3.     The ALJ's RFC Finding was Supported by Substantial Evidence

Plaintiff argues next that the ALJ's residual functional capacity assessment is not supported by medical evidence for several reasons. First, Plaintiff takes issue with the ALJ's failure to fully credit his subjective complaints, as well as her reference to portions of the

---

[6]ECF No. 8, p. 21.

medical records indicating that Plaintiff's blood pressure and diabetes were uncontrolled. Plaintiff does not, however, cite any authority in support of his statement that the ALJ should have fully credited his complaints, nor does he point to any medical records substantiating any complaints he claims the ALJ should have given more credence. When a claimant's statements concerning the intensity, persistence, or limiting effects of symptoms are not supported by objective evidence, the ALJ has the discretion to make a finding on their credibility, and his determination is entitled to considerable deference. *Foster v. Astrue*, 277 F. App'x. 462 (5th Cir. 2008). With respect to Plaintiff's argument that the ALJ "inferred" that he was non-compliant, the Court does not so interpret the ALJ's decision. The ALJ merely referenced portions of the medical records which did in fact state that on certain dates Plaintiff's blood pressure and diabetes were uncontrolled. In January and May 2012, for example, Plaintiff admitted that he did not regularly check his blood sugar, and on one occasion, the treating source notes that he did not "seem to be educated about diabetes and did not know the importance of fasting blood glucose readings."[7]

Second, Plaintiff asserts that the ALJ's reliance on the opinion of a state agency physician, Dr. Thomas Tapley, was misplaced because it was obtained in October 2011 before all of the medical evidence was submitted. In determining Plaintiff's residual functional capacity, the ALJ states that she gave significant weight to Dr. Tapley's assessment that Plaintiff could perform light work without limitation. However, as noted *supra,* the ALJ notes in the very next sentence that "in view of additional evidence received at the hearing level, including the claimant's obesity and effect of such on his right hip bursitis, additional non-exertional limitations, as well

---

[7]ECF No. 8, pp. 282-328.

8

as a sit/stand option, are warranted." The ALJ then proceeded to add exceptions to the light work that Dr. Tapley considered Plaintiff able to perform. Specifically, the ALJ limited Plaintiff to occasional stooping, kneeling, crouching, climbing, and crawling, with no climbing or exposure to heights, hazards, or dangerous machinery. Plaintiff was also limited to simple one-to-two step tasks.[8]

Third, Plaintiff argues that the ALJ's residual functional capacity is erroneous because no medical source statement from a treating or examining physician was provided. While an ALJ should typically request a medical source statement, the Fifth Circuit has held that "the absence of such a statement does not, in and of itself, make the record incomplete." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). Instead, the critical issue is whether substantial evidence supports the ALJ's determination. The medical evidence of record supports the ALJ's residual functional capacity determination in this case.

As noted by the ALJ, with regard to his diabetes and hypertension, Plaintiff denied any complaints on April 17, 2012; indicated that he "felt fine" on May 3, 2012, and was asymptomatic on June 19, 2012. Subsequent examinations through December 2012 also indicated that he was "doing well." Likewise, examinations of his right hip bursitis showed a normal gait and station and were otherwise unremarkable. Medical records also showed that Plaintiff was doing well post-operatively following his diagnoses of prostate cancer. Further, nothing of record establishes that Plaintiff's blurred vision impacts his ability to work beyond the limitations of his residual functional capacity.[9]

---

[8]ECF No. 8, pp. 25, 255-262.

[9]ECF No. 8, pp. 282-328.

Lastly, Plaintiff asserts that the ALJ's residual functional assessment is unsupported because the ALJ failed to make a function-by-function assessment of his work ability.  More particularly, Plaintiff insists that the ALJ's failure to quantify the frequency or duration that he could sit and stand in a workday when presenting her hypothetical to the vocational expert was reversible error.  In support, Plaintiff cites Social Security Ruling 83-12, which provides in pertinent part:

SPECIAL SITUATIONS

*1.     Alternate Sitting and Standing*

In some disability claims, the medical facts lead to an assessment of RFC which [is] compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing.  The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting.  Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work.  (Persons who can adjust to any need to vary sitting and standing by doing at breaks, lunch periods, etc., would still be able to perform a defined range of work.)  There are some jobs in the national economy – typically professional and managerial ones – in which a person can sit or stand with a degree of choice.  If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled.  However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task.  Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.  In cases of unusual limitation of ability to sit or stand, ***a VS should be consulted to clarify the implications for the occupational base***.

(Emphasis added).  In the present case, the ALJ utilized the testimony of a vocational expert, and presented a hypothetical that inquired whether an individual with the claimant's residual functional capacity could work with a sit/stand option.  In response, the vocational expert

specifically noted the following with respect to the jobs that she testified that Plaintiff could perform: "And this work would allow for a sit/stand option. Now, in the <u>DOT</u> job description for this job, it doesn't give a sit/stand option. That information comes from my work experience and that explanation will apply to each one of the jobs that I'm going to give."[10]

To the extent Plaintiff asserts that the ALJ erred in relying on the vocational expert's testimony, neither the D.O.T nor the vocational expert's testimony controls. Carey v. Apfel, 230 F.3d 131, 146-47 (5th Cir. 2000). Unlike the D.O.T., which gives only general descriptions of job duties, a "vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." Fields v. Bowen, 805 F.2d 1168, 1170-71 (5th Cir. 1986).

Further, the Court is not persuaded that the ALJ's failure to pose a hypothetical quantifying the hours that Plaintiff could sit and stand constitutes reversible error in this case. An ALJ's hypothetical need not use specific diagnostic or symptomatic terms when other descriptive terms can adequately define the claimant's impairments. A hypothetical need only "incorporate reasonably all disabilities of the claimant recognized by the ALJ." *Bowling*, 36 F.3d at 436. The ALJ's hypothetical underscored that Plaintiff needed a sit/stand option, and the vocational expert's testimony clearly reflects that she took this need into account in identifying other work that Plaintiff could perform. Also, while Plaintiff contends that the ALJ's failure to quantify the amount of time for his sit/stand option had a significant impact on his case, he does not point to any evidence in the record that casts doubt on the ALJ's findings.

---

[10]ECF No. 8, p. 43-44.

11

In sum, the ALJ's residual functional capacity finding that Plaintiff can perform other work is consistent with Social Security Ruling 83-12 and supported by substantial evidence.

**4.    The Treating Physician's Opinion was not Entitled to Controlling Weight**

After the hearing, Plaintiff submitted a medical source statement from his current treating physician, Dr. Calvin Ramsey, in support of a motion for reconsideration to the Appeals Council. Dr. Ramsey's medical source statement was not included as part of the administrative record, but Plaintiff has submitted a copy to the Court.  Dr. Ramsey opines that due to his impairments, Plaintiff would be incapable of performing even low-stress jobs and would miss more than four days per month.  Specifically, he opines that Plaintiff could not sit/stand/walk for more than two hours; would need to shift positions at will; could only carry less than ten pounds; and, could never stoop.  He also opined that Plaintiff had significant manipulative limitations and that his limited vision would preclude him from driving.  The Appeals Council found Dr. Ramsey's medical source statement was immaterial to the issue of disability through the date of the ALJ's decision on March 7, 2013, because it was dated well after the period considered by the ALJ, was unsupported by medical evidence, and gave no indication that Dr. Ramsey treated Plaintiff during the relevant time period.[11]

Citing 20 C.F.R. § 404.970, Plaintiff argues that Dr. Ramsey's opinion is new and material evidence rendering the ALJ's decision contrary to the weight of the evidence now of record. However, the regulation cited by Plaintiff clearly indicates that consideration of Dr. Ramsey's opinion in this case is *not* warranted:

(a) The Appeals Council will review a case if–

---

[11]ECF Nos. 8, pp. 1-2; 9-1.

>   (1) There appears to be an abuse of discretion by the administrative law judge;
>
>   (2) There is an error of law;
>
>   (3) The action, findings, or conclusions of the administrative law judge are not supported by substantial evidence;
>
>   (4) There is a broad policy or procedural issue that may affect the general public interest;
>
>   (b) If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970. Thus, the regulation clearly provides that the Appeals Council must consider new and material evidence *if* it relates to the period on or before the date of the ALJ's decision.

Plaintiff suggests that Dr. Ramsey's medical source statement *did* relate to the period in question because he assigned limitations based on impairments that were clearly established in the medical evidence before the ALJ and the Appeals Council. However, as noted by the Appeals Council, there is no indication that Dr. Ramsey treated Plaintiff during the relevant time period. Dr. Ramsey's medical source statement is dated October 1, 2013, well after the ALJ's decision and after even the decision of the Appeals Council.[12] Dr. Ramsey does not indicate that

---

[12] The Court notes that the Appeals Council also found Dr. Ramsey's medical source statement was immaterial because it "provided no supportive evidence" for his opinions. To the extent the Appeals Council considered Dr. Ramsey's medical source statement in making this determination," Plaintiff fails to show the Appeals Council erred. Under the regulations, the Appeals council is subject to the same rules for considering opinion evidence as administrative

his medial source statement is based on prior examinations of Plaintiff, and he does not appear to address Plaintiff's condition at the time of his disability application or at the time of his hearing. To be material, the evidence must "relate to the time period for which benefits were denied," and it may not "concern evidence of a later-acquired disability, or of the subsequent deterioration of a previously non-disabling condition." *Haywood v. Sullivan*, 888 F.2d 1463, 1471-72 (5th Cir. 1989) (quoting *Johnson v. Heckler,* 767 F.2d 180, 183 (5th Cir. 1985)); *Ferrari v. Astrue*, 435 F.App'x 314 (5th Cir. 2010) (rejecting as immaterial new evidence including medical source statement that did not relate to claimant's condition at the time of the application or hearing). Absent some indication that Dr. Ramsey's assessment is of Plaintiff's condition and limitations as it existed during the relevant time period, the Appeals Council was within its discretion to exclude the evidence as outside the relevant time period.

## CONCLUSION

Accordingly, for the reasons stated above, the undersigned recommends that Defendant's Motion for an Order Affirming the Decision of the Commissioner be granted.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and

---

law judges. 20 C.F.R. § 404.1527(f)(3). Thus, the Appeals Council is free to reject a treating source's opinion, in whole or in part, when the evidence supports a contrary conclusion, when the opinions are conclusory, or when they are unsupported by medically acceptable clinical, laboratory, or diagnostic techniques. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172 (5th Cir. 1995).

legal conclusions accepted by the district court.  28 U.S.C. § 636.

    Respectfully submitted, this the 15th day of July 2015.

                                           /s/  Linda R. Anderson
                                 UNITED STATES MAGISTRATE JUDGE